### 3032. LUMPKIN *v.* CITY OF ATLANTA.

A husband is not liable criminally for his wife's offenses, unless he aids, procures, or acquiesces in their commission. In order to show that the sale of a liquid denominated as beer is unlawful, and consequently that the keeping of the liquid for sale is likewise unlawful, it must be shown that the beer in question comes within one of those classes whose sale is regulated by law.

DECIDED JUNE 29, 1911.

Certiorari; from Fulton superior court—Judge Bell. October 11, 1910.

*Burton Cloud,* for plaintiff in error.

*James L. Mayson, W. D. Ellis, Jr.,* contra.

RUSSELL, J. The plaintiff in error was convicted in the recorder's court of the City of Atlanta of violating a municipal ordinance which forbids keeping for unlawful sale any spirituous, fermented, or malt liquors at any place in the city. He excepts to the judgment overruling his certiorari, and insists that the evidence adduced was insufficient to authorize his conviction.

We think this contention is well sustained. The evidence upon the trial is set out fully in the answer of the recorder, and the following facts appear therefrom: The defendant's wife had a municipal license authorizing her to conduct a boarding house or lodging house at No. 16 Piedmont avenue, in the City of Atlanta. Rumor gave the house such a questionable reputation that the police decided to raid it, and ascertain the exact nature of the business being transacted there. As some of the officers were approaching the house they saw the defendant going down the alley. They stopped him and inquired his name. He gave his name correctly. They then asked him where he lived, and he pointed to the house which was under suspicion. He was required to return to the house, and when told that it was suspected that intoxicating liquors were being sold there, he readily agreed for the house to be searched, and gave the officers the keys. In going through the house the officers found a man in a drunken stupor upon a bed

in one of the rooms, and a woman upon the same bed, who had a flask of whisky. On the lower floor of the house they found some beer and some empty bottles. Above the overhead ceiling in the room upstairs they found about 55 flasks of whisky. Both before and after the search the defendant emphatically denied that he had any whisky in the house, and after the officers discovered the whisky and beer the woman who was reputed to be his wife admitted that it was hers. Upon the trial a witness testified that he frequently sold the defendant's wife quantities of beer, and the woman who was found with the pint of whisky at the time of the raid testified that she bought it from Kirk Bane Lumpkin (the wife) and paid her for it. Kirk Bane Lumpkin admitted before the court that the whisky and the beer were her property, and stated that the defendant, Will Lumpkin, knew nothing about it. There was no evidence that he had either bought or sold any of the proscribed liquids.

The only circumstance which really tends to criminate the defendant (outside of an admission that the beer in the house belonged to him, of which we will speak later) is the fact that the defendant's wife admitted that she had sold both whisky and beer. This raises the question of the extent of the husband's criminal liability for the acts of his wife, and the inquiry as to whether the evidence shows that the husband participated in any way in the criminal act of his wife. It may be stated in passing that there was no direct proof that these two persons were actually husband and wife. Neither of them so stated upon the trial, and it does not appear that any witness knew that the parties sustained to each other the relation of husband and wife, or that they held themselves out to be husband and wife, though two witnesses denominated the woman in the case as the defendant's wife, and the defendant neither affirmed nor denied that he was married. Granted that the woman, who was shown by undisputed testimony to have purchased the beer, and who was the only person who was shown to have sold any whisky, or to have known of the presence of whisky in its hiding place above the ceiling of the bathroom, was the wife of the plaintiff in error, the question which naturally arises is whether proof of a violation of a law by the wife in a house jointly occupied by herself and her husband, without more, will justify the inference that the husband was concerned in or au-

thorized his wife's infraction of the law. If it had been shown that the husband was present at any sale of the intoxicating liquors in question, and acquiesced or did not protest against it, or if it had been shown that he had purchased either the whisky or the beer, or that he assisted in secreting them, these circumstances might have had some probative value, and might have authorized the inference that he was in some way concerned in the violation of the ordinance; but there is no evidence to this effect. Of course, the fact that the house was rented by the wife, and that it was her place of business as a boarding house under the city license, is entirely immaterial, as is also the soundness of the woman's statement that it was her house, and that the plaintiff in error was a mere interloper, and only permitted to stay there by her clemency. Whether the man and the woman in this case were married or not, if he aided and abetted in any way in the violation of the municipal ordinance, he would be guilty.

On the other hand, the mere existence of the marriage relation and the occupancy of the same residence are not strong enough circumstances of themselves to support the inference (to the exclusion of every other reasonable hypothesis) that a husband has knowledge of and consents to every act done by his wife. A husband is not liable criminally for his wife's offenses, unless he aids, procures, or acquiesces in their commission. It is just as reasonable to suppose, from the care used to secrete the whisky, that this defendant was unaware of its presence as that he knew it was being kept for illegal sale; for there is no evidence that he knew that any whisky was in the house. As to the beer, it is reasonable to suppose that he knew that it was kept in the house; but aside from the fact that there is no evidence that he knew that it was kept for sale, or for any other purpose than as a beverage, there is no evidence that it was intoxicating, or even such a beer as that it could not be sold without a license. One of the policemen testified that the defendant admitted that the beer was his; another, that he denied knowing anything about it. But, conceding that he admitted that the beer in the house was his, this would not establish the fact that it was such a beer as could not be lawfully sold by him, even without a license. Not every liquid called beer is judicially known to be intoxicating. *Cripe* v. *State,* 4 *Ga. App.* 832 (62 S. E. 567); *Snider* v. *State,* 81 *Ga.* 753 (7 S. E. 613, 12 Am.

St. Rep. 350). Some beers are known to be non-intoxicating. In order to show that the sale of a liquid denominated as beer is unlawful, and consequently that the keeping of the liquid for sale is likewise unlawful, it must be shown that the beer in question comes within one of those classes whose sale is regulated by law. Persimmon, locust, corn, and other beers are perhaps not intoxicating. On the other hand, liquid may be called by the most innocent name, and yet the proof may show that the name is but a disguise, and that the sale of the fluid in question is prohibited by law.

Even if the large number of bottles of beer in the defendant's house were a suspicious circumstance sufficient to authorize the inference that the beer could only have been kept for sale (and this circumstance alone would not be sufficient to authorize conviction), a conviction can not be supported in this case, because there is no evidence that the beer was of such character as that it would have been unlawful to sell it. On the other hand, even if the beer in question was intoxicating liquor, in the absence of any evidence that the husband knew that his wife was engaged in its sale, the conviction would not be authorized. Furthermore, though the husband must generally be recognized as the head of the house (*Patterson* v. *State*, 8 *Ga. App.* 454, 69 S. E. 591), still he is not criminally liable for the malfeasance of his spouse, unless he at least acquiesces in her offense. If he can not prevent or dares not to protest in a case where the "weaker vessel" will not acknowledge his dominion, he may be an object of ridicule and pity, but is not subject to the penalties of the criminal law.

*Judgment reversed.*